

**ROBERT A. GORDON**
**U.S. BANKRUPTCY JUDGE**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
### (at Baltimore)

| | | |
|---|---|---|
| In re: | * | |
| Patrick Joseph Kelly | * | Case No. 17-26273-RAG |
| | | Chapter 13 |
| Debtor | | |
| * * * * * * | * | * * * * * * |
| Patrick Joseph Kelly | * | |
| Plaintiff | * | |
| v. | * | Adversary No. 18-00222 |
| Deutsche Bank National Trust Company As Trustee for Residential Asset | * | |
| Securitization Trust 2007-A9 Mortgage | * | |
| Pass-Through Certificates Series 2007-1, Ocwen Home Loan Services, LLC, | * | |
| Indy Mac Bank | | |
| | * | |
| Defendants | | |
| * * * * * * | * | * * * * * * |

## ORDER GRANTING DEFENDANT'S
## MOTION TO DISMISS COMPLAINT
## <u>WITH PREJUDICE</u>

*Pro Se* Plaintiff, Patrick J. Kelly, the Debtor in the Main Case,[1] commenced this

---

[1] Mr. Kelly is represented by Mr. John Shin, Esq. in the main bankruptcy case. Mr. Shin indicated at the July 27, 2018 hearing in the main bankruptcy case that Mr. Kelly was close to hiring an attorney to represent him in this Adversary Proceeding.

Adversary Proceeding by filing a Complaint on June 14, 2018.  The Defendant, Deutsche

Bank National Trust Company as Trustee for Residential Asset Securitization Trust 2007-A9

Mortgage Pass-Through Certificates Series 2007-1,[2] (Defendant) filed a Motion to Dismiss

(Motion) on July 3, 2018 (Dkt. No. 10).[3]  The Plaintiff has not filed a response to the Motion.

A pre-trial conference was held on July 27, 2018 and at that time the Oversigned indicated

that a ruling on the Motion would be forthcoming within 30 days.  This Order sets forth the

promised ruling.

Plaintiff has attempted to prosecute his alleged claims more than once and previously

with the aid of Counsel.  Thus there is an ample procedural record of events, particularly as

highlighted in the Motion and prior motions to dismiss prepared and filed by the Defendant

and its predecessors-in-interest.  Therefore, the Court concludes that there is no need to spell

out prior events in any great length; most of what is set forth in this Order is borrowed from

the Motion and the face of the multiple exhibits submitted in support of the Motion.  The sum

total of this history is the conclusion that the Complaint must be dismissed with prejudice.[4]

Plaintiff is the current owner of the real property located at 1909 Orchard Point Road,

Pasadena, MD 21122 (Property).  On June 20, 2007, Plaintiff borrowed $1,066,500.00 from

Indy Mac Bank, FSB (Note) and secured the Note with a deed of trust, which was recorded in

the Land Records of Anne Arundel County, Maryland on the same day, at Book 19244, Page

0692 (Deed of Trust).  The Deed of Trust secured the loan with a first priority lien on the

Property.

---

[2] The Plaintiff named Ocwen Home Loan Services, LLC, and Indy Mac Bank as defendants in the Complaint.  The docket does not reflect whether these entities have been served with the Summons and Complaint.

[3] The Motion to Dismiss consists of a memorandum of law and 14 exhibits.  There is no separate paper designated as a "motion" but the Court finds that to be of little moment given the overall case posture.

[4] The Plaintiff did not request a hearing on the Motion at that time and again, has not filed a response.

The Deed of Trust was subsequently assigned to the Defendant in a Maryland Assignment of Deed of Trust recorded in the Land Records of Anne Arundel County, Maryland, October 28, 2013 at Book 19244, Page 0692. The Defendant filed an Order to Docket Foreclosure on May 21, 2015 in the Circuit Court of Anne Arundel County Maryland as Civil No. C-02-CV-15-001770 (Foreclosure Action).

Plaintiff has asserted his claims under the federal Truth in Lending Act ("TILA"),[5] twice in the U. S. District Court for the District of Maryland (U.S.D.C.) (Case Nos. 16-01049 & 17-00039), and also, in the Foreclosure Action in an attempt to stay a pending foreclosure sale. In each instance, the Plaintiff lost at the pleading stage.[6] In this proceeding, Plaintiff attempts to utilize 11 U.S.C. §506(a) to value the Defendant's claim as $0 (zero), but the alleged basis for this relief has nothing to do with the asserted fair market value of the Property in relation to that of the lien, which are the fundamental elements of the longstanding statutory valuation formula. Rather, Plaintiff's claim for relief (once again) rests solely and unqualifiedly upon the allegation that he rescinded the loan under TILA (under his interpretation of the holding of *Jesinoski v. Countrywide Home Loans, Inc.,* 135 S. Ct. 790 (2015)) and he is therefore entitled to the Property free and clear of the lien. However, as the Defendant points out, this argument has been raised again and again by the Plaintiff in two prior venues without success. If ever a dispute screamed out for an application of the doctrine of claim preclusion, or *res judicata*, this is that case.

Pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must be dismissed if it fails to state a

---

[5] 15 U.S.C. §1601, *et seq.* His TILA claims are based on two letters, one in June and July 2008, Plaintiff sent to IndyMac to rescind the loan transaction.

[6] For a more fulsome description of the prior litigation, see Defendant's Mem of Law at 4-5 (Adv. Proc. No. 18-00222, Dkt. No. 10).

claim upon which relief may be granted. The Court must accept well-pled allegations in Plaintiff's Complaint as true but it is not required to accept conclusory factual allegations. *See United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979). Nor should the Court consider unsupported legal conclusions or legal conclusions disguised as factual allegations. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Papasan v. Allain*, 478 U.S. 265, 286 (1986); *E. Shore Mkts., Inc. v. J.D. Associates LTD*, 213 F.3d 175, 180 (4th Cir. 2000). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.*

Under Rule 12(b)(6), "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). The "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumptions that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (citations omitted). But, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, 'this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court.'" *Id.* at 558 (citation omitted). A court may consider documents referred to in the Complaint without converting a Rule 12(b)(6) motion into one for summary judgment "so long as the authenticity of these documents is not disputed." *Witthohn v. Fed. Ins. Co.*, 164 F. App'x 395, 396 (4th Cir. 2006). A court "may consider documents attached to the complaint, *see* Fed. R. Civ. P. 10(c), as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic." *Sec'y of State for Defence v. Trimble Navigation*

4

*Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007).

It is proper to consider the defense of claim preclusion, or *res judicata*, in the context of a Rule 12(b)(6) motion to dismiss. *Andrews v. Daw*, 201 F.3d 521, 524 n.1 (4th Cir. 2000); *Richmond, Fredericksburg & Potomac, R.R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993); *Thomas v. Consolidation Coal Co.*, 380 F.2d 69, 75 (4th Cir. 1967). In that vein, claim preclusion applies to bar the consideration of a complaint when three elements are present: "(1) a final judgment on the merits in a prior suit; (2) an identity of the cause of action in both the earlier and the later suit; and (3) an identity of parties or their privies in the two suits." *Providence Hall Assocs. Ltd. P'ship v. Wells Fargo Bank, N.A.*, 816 F.3d 273, 276 (4th Cir. 2016); *Pueschel v. United States*, 369 F.3d 345, 354-55 (4th Cir. 2004); *In re Smith*, 401 B.R. 733, 736 (Bankr. D. Md. 2008). With no opposing view filed by the Plaintiff, the Court must consider whether the Defendant has carried its burden in asserting the defense of *res judicata*.

The Court concludes that the last Complaint filed in Case No. 17-00039 (U.S.D.C. Complaint), and the dismissal of the same, are the most decisive events for purposes of applying claim preclusion. A copy of the Plaintiff's Complaint filed in that case is attached as Appendix I. For comparison's sake, a copy of the Complaint filed in this Adversary Proceeding is attached as Appendix II. Finally, also attached is a copy of the Letter/Order (dismissal with prejudice) entered by the U.S.D.C. (U.S.D.C. Order) as Appendix III.

As to the first prong of the test, there is no dispute that the Defendant is the same in both actions. Plaintiff sued Deutsche Bank in the U.S.D.C. action and Deutsche Bank is the Defendant in this proceeding. Second, the U.S.D.C. Complaint was dismissed with prejudice. Plaintiff appealed that ruling to the Fourth Circuit Court of Appeals and the decision was affirmed. The U.S.D.C. Order is thus a final judgment on the merits.

5

As to the third prong, the identity of the cause of action, that too, leaves little room for doubt that the requirement has been met.  For purposes of *res judicata*, two suits and the claims asserted therein are the same if they "arise out of the same transaction or series of transactions or the same core of operative facts." *Pueschel*, 369 F.3d at 355.  The claim or the legal theory need not be identical.  *Res judicata* will apply to preclude a claim that was or could have been asserted from the same set of operative facts.  *Providence Hall Assocs.*, 816 F.3d at 282.  In the U.S.D.C. action, Plaintiff was seeking a declaratory judgment that the loan had been rescinded.  In this proceeding, Plaintiff seeks to use 11 U.S.C. §506(a) to "value" the Defendant's claim at zero.  But in reality, the Plaintiff is requesting a determination that (a) the Note and the Deed of Trust are ineffectual, (b) the debt has been fully discharged and (c) that the loan was properly rescinded and cannot be enforced.  The characterization may be slightly different, but at bottom, Plaintiff is still attempting to breathe life into a TILA claim that died long ago.  Plaintiff leavens the Complaint with allusions to different legal theories and terminology but the essence of it is the assertion that he has rescinded the loan and is therefore entitled to the Property free and clear of any claims.[7]  In light of that, and the multiple prior rulings, this Court is hard pressed to understand how it could rationally allow the Complaint to proceed.[8]  *See Keith v. Aldridge*, 900 F.2d 736, 740 (4th Cir. 1990) ("principal purpose of the general rule of res judicata is to protect the defendant from the burden of relitigating the same claim in different suits"); *Mua v. Maryland*, 2017 U.S. Dist.

---

[7] For example, Plaintiff throws in for good measure, other requested relief, including quieting the title, finding the Defendant has no standing due to its failure to file a proof of claim, and declaring Plaintiff is the rightful owner of the Property.

[8] Section 506(a) determines whether and to what extent a creditor's claim is "secured," and when applicable, separates the secured portion of the claim from the unsecured.  Under §506(a), the secured portion of the claim is limited to the value of the collateral.  Section 506(a) is not the correct tool to secure rescission.

LEXIS 21813 (D. Md. Feb. 15, 2017) ("*res judicata* will bar a newly articulated claim if it is based on the same underlying transaction and could have been brought in the earlier action" (internal quotations omitted)).

Even if the foregoing were not enough, perhaps the best evidence of the strength of the Defendant's argument is the Plaintiff's failure to contest the Motion. The Court concludes this is so because there is no meritorious response in the face of the result of the prior litigation. Accordingly, upon consideration of the Motion to Dismiss Adversary Proceeding (Dkt. No. 10) filed by Deutsche Bank National Trust Company, as Trustee for Residential Asset Securitization Trust 2007-AP Mortgage Pass-Through Certificates, Series 2007-I and no opposition thereto, it is hereby

ORDERED, that the Defendant's Motion to Dismiss Adversary Proceeding is granted; and it is further

ORDERED, that the Plaintiff's Complaint is dismissed with prejudice.


cc:     Debtor/Plaintiff - Patrick J. Kelly
        Counsel for Defendant – Renee Dyson, Esquire
        All parties


**End of Order**

# APPENDIX I

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### *Northern Division*

|  |  |  |
|---|---|---|
| Patrick J. Kelly | ) | |
| | ) | |
| 1909 Orchard Point Road | ) | |
| Pasadena, MD 21122 | ) | |
| | ) | |
| *Plaintiff* | ) | |
| | ) | |
| vs. | ) | Civil Action No.: |
| | ) | |
| Carrie M. Ward | ) | |
| Howard N. Bierman | ) | |
| Jacob Geesing | ) | |
| Pratima Lele | ) | |
| Joshua Coleman | ) | |
| Richard R. Goldsmith, Jr. | ) | |
| Ludeen McCartney-Green | ) | |
| Jason Kutcher | ) | |
| Nicholas Derdock | ) | |
| Elizabeth C. Jones | ) | |
| As substitute trustees under a deed of trust | ) | |
| | ) | |
| Serve all at: | ) | |
| BWW Law Group, LLC | ) | |
| 6003 Executive Blvd. Suite 101 | ) | |
| Rockville, MD 20852 | ) | |
| | ) | |
| Ocwen Loan Servicing, LLC | ) | |
| | ) | |
| CSC Lawyers Incorporating | ) | |
| Service Company | ) | |
| 7 St. Paul Street Suite 820 | ) | |
| Baltimore, MD 21202 | ) | |
| | ) | |

-1-

IndyMac Mortgage Services     )
OneWest Bank, NA      )
           )
   Terry Laughlin, CEO   )
   888 E. Walnut Street   )
   Pasadena, CA 91101   )
           )
Deutsche Bank National Trust Company, )
as trustee for Residential Asset   )
Securitization Trust 2007-A9   )
Mortgage Pass-Through Certificates  )
Series 2007-I       )
           )
   300 South Grand Avenue  )
   41ˢᵗ Floor      )
   Los Angeles, CA 90071   )
           )
   ***Defendants***     )
_____)

## COMPLAINT FOR DECLARATORY JUDGMENT

   Patrick J. Kelly, by undersigned counsel, requests a declaratory judgment pursuant to 28

USC §2201(a) that he effectively rescinded a loan utilized to refinance his residence, where the

lender acquired a security interest in that residence.

   1.  This action arises under a federal statute, 15 USC § 1601, et seq., the Truth in Lending

Act ("TILA").

   2.  Venue is proper in this court because plaintiff is a resident of Maryland, the

defendants conduct business in the State of Maryland, and the real property at issue is located in

the State of Maryland.

### *Parties*

   3.  Plaintiff Patrick J. Kelly ("Mr. Kelly") is the owner of the real property known as 1909

Orchard Point Road, Pasadena, Maryland (the "Property"), which is allegedly encumbered by a

deed of trust that was rescinded by Mr. Kelly pursuant to the Truth in Lending Act.

4.   Defendants Carrie M. Ward, Howard N. Bierman, Jacob Geesing, Pratima Lele, Joshua Coleman, Richard R. Goldsmith, Jr., Ludeen McCartney-Green, Jason Kutcher, Nicholas Derdock, and Elizabeth C. Jones, are substitute trustees (the "Substitute Trustees") under a deed of trust recorded in the land records of Anne Arundel County, Maryland, encumbering the Property.  A foreclosure proceeding is pending in the Circuit Court for Anne Arundel County, Maryland, brought by the Substitute Trustees (case number C-02-CV-15-001770), who have scheduled a foreclosure sale of the Property for January 10, 2017.  The Substitute Trustees are acting under the authority of a promissory note and deed of trust which plaintiff has rescinded.

5.   Defendant IndyMac Mortgage Services ("IndyMac Mortgage") is a wholly-owned subsidiary of defendant OneWest Bank, NA.  IndyMac Mortgage's predecessor, IndyMac Bank, was the original lender and was subsequently acquired by OneWest Bank, NA.  OneWest Bank, NA, has apparently sold the note rescinded by Mr. Kelly to defendant Deutsche Bank National Trust Company, as trustee for a securitized mortgage pool known as  Residential Asset Securitization Trust 2007-A9 Mortgage Pass-Through Certificates Series 2007-I.  Defendant Ocwen Loan Servicing, LLC, services the loan in question for Deutsche Bank National Trust Company.

6.   One of the defendants is the "holder" of the rescinded note.  The owner of the obligation alleged to have been rescinded is Deutsche Bank National Trust Company, as trustee of the securitization trust.

### *Background Facts*

7.   On June 27, 2005, Mr. Kelly and his wife, Andrea Kelly, purchased the Property for

-3-

the sum of $925,000.  The purchase was financed with a promissory note secured by a deed of

trust, and the Property was intended to be used, and was used, as the principal residence of Mr.

and Mrs. Kelly.

8.  In 2007, Mr. And Mrs. Kelly separated with the intent to end their marriage.  On or

about April 1, 2007, Mr. And Mrs. Kelly executed a marital settlement agreement, the most

important provision of which, for the purposes this action, was that Mrs. Kelly conveyed her

entire interest in the Property to Mr. Kelly, who continued to live at the Property, and was

obliged by the agreement to refinance the Property so as to eliminate any liability for Mrs. Kelly.

9.  To refinance the debt secured by the Property, Mr. Kelly obtained the assistance of

National Capital Title & Escrow, LLC ("National Capital Title").  National Capital Title

arranged a loan in the amount of $1,066,500.00.  Plaintiff believes the loan was funded by

IndyMac Bank, because the loan was assigned to IndyMac Bank on the same day as the closing

with Mr. Kelly, June 20, 2007.

10.  The closing documents failed to comply with the federal Truth in Lending Act, 15

USC § 1601, et seq.  The specific deficiencies are set forth below, in paragraphs 32 - 38 below.

11.  By October 2007, Mr. Kelly had contacted IndyMac Bank to request a loan

modification.  The reasons for Mr. Kelly's request included the onset of problems in the

economy as a whole; the implosion of Mr. Kelly's profession in particular (he was a real estate

developer); and the discovery that his home was probably not worth the $1.5 million represented

in the appraisal provided by IndyMac Bank.  Mr. Kelly employed a Florida-licensed attorney,

Brian Korte, to represent him in connection with the request for mortgage assistance.

Specifically, Mr. Kelly requested that he be permitted to suspend his monthly mortgage payments

-4-

while he resolved his financial problems.  Mr. Kelly stated he was willing to pay the real estate

taxes and insurance during any time of suspended payments.

12.   On or about December 4, 2007, IndyMac Bank responded to Mr. Kelly's request for

mortgage modification.  In its letter, IndyMac Bank acknowledged that Mr. Kelly was requesting

mortgage assistance due to his financial hardship, and agreed to forebear from foreclosure until

April 2008, provided Mr. Kelly met various conditions.

13.   Mr. Kelly (by his attorney, Mr. Korte) accepted the terms of IndyMac Bank's offer by

letter dated January 7, 2008.  Mr. Kelly complied with the IndyMac Bank terms, but IndyMac

Bank announced in March that Mr. Kelly was delinquent and that a foreclosure would occur in

April if he did not cure his default by payment of the sum of $23,093.18, as well as any

additional monthly payments, late charges and fees accruing before the payment was made.  If

Mr. Kelly failed to cure the default in full, IndyMac Bank would accelerate his mortgage and

initiate foreclosure proceedings.  This was not the agreement Mr. Kelly thought he had made

with IndyMac Bank.  Although Mr. Kelly did not know this at the time, Indy Mac Bank was

apparently having difficulty with the Federal Deposit Insurance Corporation ("FDIC").

14.   IndyMac Bank refused to engage in any further discussions with Mr. Kelly or Mr.

Korte.  Consequently, Mr. Kelly informed IndyMac Bank (using the Austin, Texas address that

appeared on his statements), by letter dated June 10, 2008, that he was exercising his right of

rescission pursuant to the Federal Truth in Lending Act

15.   IndyMac Bank did not respond to Mr. Kelly's rescission as provided by TILA within

the time prescribed by the statute.

16.   Noting the failure of IndyMac Bank to respond to his rescission, Mr. Kelly sent a

-5-

second notice of the exercise of his right of rescission to IndyMac Bank (using the Kalamazoo,

Michigan address appearing on his statements) on July 20, 2008.  Mr. Kelly knows that IndyMac

Bank received both letters, because in the course of a subsequent foreclosure proceeding,

eventually voluntarily dismissed by its substitute trustees, the attorney for those substitute

trustees produced the rescission letters and asked Mr. Kelly questions about them.  IndyMac

Bank again failed to respond to the letter.

17.  On July 11, 2008, IndyMac Bank was placed in conservatorship by the Federal

Deposit Insurance Corporation ("FDIC").  A bridge bank, IndyMac Federal Bank, FSB, was

created to assume control of IndyMac's former assets; the bridge bank was itself under the

control of the FDIC.  On March 19, 2009, the FDIC completed the sale of IndyMac Federal

Bank, FSB, to OneWest Bank, FSB ("OneWest"), at a significant discount to the face value of

the assets.  OneWest was thus knowingly acquiring assets which were non-performing, in

default, or at least at significant risk of default.

18.  It appears that OneWest then sold the rescinded note to defendant Deutsche Bank

National Trust Company, as trustee for a securitized mortgage pool known as Residential Asset

Securitization Trust 2007-A9 Mortgage Pass-Through Certificates Series 2007-I.  The rescinded

note was serviced by defendant Ocwen Loan Servicing, LLC.

19.  Eventually, a foreclosure sale was scheduled with respect to the Property.  Mr. Kelly

filed a voluntary petition in bankruptcy under Chapter 7 of the Bankruptcy Code on August 11,

2015.  On his bankruptcy schedules, Mr. Kelly stated that the indebtedness with respect to

OneWest was "disputed,."  The reason for the dispute was Mr. Kelly's recession of the loan in

question.

-6-

20.  A motion for relief from stay with respect to 1909 Orchard Point Road was filed on

September 2, 2015, on behalf of Ocwen Loan Servicing, LLC, "as servicer for Deutsche Bank

National Trust Company as Trustee for Residential Asset Securitization Trust 2007-A9 Mortgage

Pass-Through Certificates Series 2007-I."

21.  Mr. Kelly filed a *pro se* adversary proceeding against Ocwen, OneWest and Deutsche

Bank on November 16, 2015, requesting a declaratory judgment to the effect that he had

rescinded the loan in 2008.  The defendants filed a motion to dismiss, and the motion to lift stay

was withdrawn on November 20, 2016.  At a hearing concerning the adversary proceeding, the

bankruptcy judge expressed doubt that he had jurisdiction to decide the adversary proceeding,

which was grounded on the violation of a federal statute unconnected with bankruptcy. A motion

to withdraw the reference to the bankruptcy court with regard to the adversary proceeding was

filed by undersigned counsel.  That motion was granted by the district court, and the case was

removed to the United States District Court for the District of Maryland and assigned to Judge

Russell (case number 1:16-cv-01049-GLR).

22.  Judge Russell ultimately granted the motion to dismiss the complaint on the grounds

that Mr. Kelly had failed to allege the factual basis for his rescission of the loan, which had

occurred outside of the three-day window in which a loan subject to TILA may be rescinded for

any reason.  Mr. Kelly had not alleged any of the TILA violations which are grounds for

rescission up to three years after the loan is consummated.  The dismissal was *without prejudice*.

23.  The final decree in the bankruptcy case was entered, and the case was closed, on

September 19, 2016.  The Chapter 7 Trustee's Report of No Distribution was filed on October

26, 2015, and showed "Assets Abandoned" in the amount of $684,335 "without deducting any

secured claims." This amount is largely, if not solely, comprised of the value of the Property, which was expressly abandoned by the trustee with knowledge of the claim as "disputed." Therefore, Mr. Kelly's claim that the promissory note and deed of trust encumbering the property have been rescinded is a claim which belongs to him, rather than his Chapter 7 trustee.

### *Plaintiff's Standing to Bring this Action*

24.   This action is a claim for declaratory relief only; plaintiff has no claim for a money judgment or other affirmative relief.

25.   Plaintiff is threatened with the loss of his residence if the pending foreclosure sale action results in the ratification of a sale.  This is an economic injury, an invasion of a legally protected interest because economic interests are legally protected interests.  Plaintiff's statutory right to rescind a loan secured by his residence is being violated.

26.   The economic injury is concrete and particularized; it is the loss of his residence.

27.   The economic injury is actual and immanent, and not conjectural or hypothetical. There is a foreclosure sale scheduled with respect to plaintiff's residence.  Even if it is canceled, the intention of the Substitute Trustees is plain.

28.   There is a causal relation between the injury (the foreclosure sale) and the conduct complained of (the refusal of the defendants to respect Mr. Kelly's rescission of the loan in question).

29.   Plaintiff's injury would be redressed by a favorable decision to the effect that he did successfully rescind the loan in question, and that the promissory note and accompanying security interest under a deed of trust cannot be enforced because they were rescinded.

30.   Thus, plaintiff's injury is sufficiently likely, concrete, and immanent to satisfy the

-8-

constitutional requirement that he bring a "case or controversy" before the court.

31.  Plaintiff has no adequate remedy under the Maryland foreclosure law.  In the foreclosure proceeding, plaintiff is not guaranteed discovery or a hearing concerning his TILA complaint.  This is a federal question, and not an issue of fraud by the alleged holder of the promissory note, and thus not a complaint that the Circuit Court for Anne Arundel county would be prepared to deal with as a defense to a mortgage foreclosure.

### *Violations of the Truth in Lending Act*

32.  As is set forth immediately below, National Capital Title and IndyMac Bank violated the TILA.  On the basis of these violations, Mr. Kelly was entitled to rescind the loan transaction within three years of the closing.  Mr. Kelly did so, by giving written notice of the rescission on two separate occasions. Mr. Kelly was not obligated to tender any funds to any of the defendants at the time of the rescission, and he did not do so.  The rescission was effective upon the mailing of the letters.

33.  TILA was violated when National Capital Title failed to accurately disclose to Mr. Kelly the finance charges, the amount financed, and the Annual Percentage Rate ("APR").  There is a substantial difference between the APR in the initial TILA disclosure to Mr. Kelly by National Capital Title and the final TILA disclosure.

34.  The truth in Lending Disclosure Statement shows the Finance Charge as $1,975,001.77, which is understated by more than $100.00.

35.  The amount financed as set forth on Line 202 of the HUD-1 is not accurately reflected in the Amount Financed as stated on the Truth in Lending Disclosure Statement.  This amounts to an inaccurate statement of the finance charges under 15 USC § 1605(f)(2)(A), which

constitutes the failure to make a material disclosure as defined by 15 USC § 1601(u), and is a violation of TILA.

36.  The combination of understated finance charges and overstated amount financed leads to an understatement of the APR in excess of 1/8 of 1percent, which is a violation of 15 USC § 1606(c).

37.  National Capital Title violated TILA by not including the Uniform Residential Loan Applications ("1003)" in the closing package.  Failure to include the 1003 in the closing package makes it impossible for Mr. Kelly to know if he received the annual percentage interest rate and terms he requested.

38.  Any of the forgoing violations entitles Mr. Kelly to rescind the loan transaction for a period of up to three years after closing.  15 USC § 1635(1); 12 CFR § 226.23(a)(3).  Mr. Kelly rescinded the transaction.  Rescission is a complete defense to the pending foreclosure action.

WHEREFORE, plaintiff Patrick J. Kelly requests that this court issue a declaratory judgment that he rescinded the loan transaction in questionk and that the promissory note and deed of trust associated with that transaction are unenforceable.

/s/ Paul F. Newhouse
Federal Bar No.: 01119
4901 Roland Avenue
Baltimore, MD 21210
paul.newhouse@towsonlaw.com
410-296-8565
443-845-0688

-10-

# APPENDIX II

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MARYLAND
## BALTIMORE DIVISION

FILED

2010 JUN 14  PM 2:45

U.S. BANKRUPTCY COURT
DISTRICT OF MARYLAND
BALTIMORE

| | | |
|---|---|---|
| Patrick J. Kelly | * | |
| Petitioner | * | Case No. 17-26273 |
| | * | |
| | * | Adversary Case No._____ |
| Deutsche Bank National Trust Company | | Chapter 13 |
| As Trustee for Residential Asset Securitization | * | |
| Trust 2007-A9 Mortgage Pass-Through | | |
| Certificates Series 2007-I, Ocwen Home Loan | * | |
| Services, LLC, Indy Mac Bank | | |
| Defendants | * | |
| | * | |

*   *   *   *   *   *   *   *   *   *   *   *   *

## COMPLAINT
## TO VALUE CLAIM TO ZERO PURSUANT TO § 506(a)
## OF REAL PROPERTY IN THE KELLY ESTATE

**COMES NOW**, Patrick J. Kelly, Petitioner ("Kelly"), with clean hands, in good conscience and equity, and files complaint against Defendants styled above and states as follows:

### NATURE OF THE CASE

This Complaint seeks, pursuant to 11 U.S.C. § 506(a), to value the secured claims of the Defendant, at $0.00, to avoid any alleged liens pursuant to 11 U.S.C. §§ 506(d), 524(1) (2), 544, 547, 548 and 549, and to quiet title in real property located at 1909 Old Orchard Point Road, Pasadena, Maryland (the "Property"), legally described as follows:

## JURISDICTION AND VENUE

1.      Property is in Anne Arundel County, Maryland and, therefore, falls under this Honorable Court's Jurisdiction.

2.      Even though the real estate is governed by state law, notwithstanding, this case is a matter of a federal question and solely lies in the jurisdiction of the Federal Courts due to Title 12 Banks and Banking, Truth and Lending Act.  Since all lenders are under full jurisdiction of the Federal Reserve, this Court has priority jurisdiction.

3.      Moreover, courts have long held that the definition of "property" extends to causes of action, including TILA claims.  11 U.S.C. § 541(a)(1)

4.      The Petitioner lives in Anne Arundel County and the Defendants have done extensive business in Anne Arundel County with use of federal monies under federal law.

5.      This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157(b) and 1334(b).

6.      This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B), (K) and (O).

## JUDICIAL NOTICE

Petitioner moves this Honorable Court to take Mandatory Judicial Notice under the Federal Rules of Civil Procedure Rule 201(d) of the following:

1.      The United States Supreme Court, in Haines v. Kerner 404 U.S. 519 (1972), said that all litigants defending themselves must be afforded the opportunity to present their evidence and that the Court should look to the substance of the complaint rather than the form.

2.      In Platsky v. CIA, 953 F.2d 26 (2nd Cir. 1991), the Circuit Court of Appeals allowed that the District Court should have explained to the pro se litigant, the correct form so that he could have amended his pleadings accordingly.  Petitioner respectfully reserves the right to amend this Complaint.

3.      Under the Federal Rules of Evidence 1002 and 1003 governing the admissibility of duplicates, any photocopies brought in as evidence are forgeries.  It is unfair to admit a

photocopy in the place of an original document, as there can be information contained within an original that is not in a photocopy, specifically, the only legally binding chain of title to the promissory note.

4.     Under Uniform Commercial Code Article 3,-§3-308, all signatures presented that are not in an original format (i.e., with the original wet ink signature) are hereby denied and inadmissible.

5.     That Deutsche Bank, as trustee, who alleges interests in this loan, was warned by the Court in a similar case of 2016 (Case Number 17-10325) with the same exact parties, exact same matter, regarding why the trustee has never filed a proof of claim.  Deutsche Bank or its successors or servicers need to file proof of claim.

## THE PARTIES

1.     The Petitioner, Mr. Kelly, is the legal title owner of the real estate property located in this County.

2.     The Defendant/alleged Creditor named as Ocwen Home Loan Servicing is the current servicer of the promissory note.  *See* copy of promissory note attached hereto as Exhibit A.

3.     The Defendant Deutsche Bank, as trustee, is wishing to lay claim on the property as a real party of interest.

4.     The Defendant Deutsche Bank, as trustee, is a debt collector which is attempting to collect a debt.

5.     The Defendant IndyMac Bank may be wishing to lay claim on the property as a real party of Interest.

## STATEMENT OF FACTS

1.  On June 27, 2005, Mr. Kelly and his wife, Andrea Kelly, purchased the Property for the sum of $925,000. The purchase was financed with a promissory note secured by a

deed of trust, and the Property was intended to be used, and was used, as the principal residence of Mr. and Mrs. Kelly.

2. In 2007, Mr. and Mrs. Kelly separated with the intent to end their marriage. On or about April 1, 2007, Mr. and Mrs. Kelly executed a marital settlement agreement, the most important provision of which, for the purposes of this action, was that Mrs. Kelly conveyed her entire interest in the Property to Mr. Kelly, who was obliged by the agreement to refinance the Property as sole debtor.

3. To refinance the debt secured by the Property, Mr. Kelly obtained the assistance of National Capital Title & Escrow, LLC ("National Capital Title"). National Capital Title arranged a loan in the amount of $1,066,500.00. Plaintiff believes the loan was funded by IndyMac Bank, because the loan was assigned to IndyMac on the same day as the closing with Mr. Kelly, June 20, 2007.

4. This closing failed to comply with the federal Truth in Lending Act, 15 USC § 1601, et seq. The specific deficiencies are set forth below.

5. By October 2007, Mr. Kelly had contacted IndyMac Mortgage Services to request a loan modification. The reasons for Mr. Kelly's request included the onset of problems in the economy as a whole; the implosion of Mr. Kelly's profession in particular (he was a real estate developer); and the discovery that his home was probably not worth the $1.5 million represented in the appraisal provided by IndyMac. Mr. Kelly employed a Florida-licensed attorney, Brian Korte, to represent him in connection with the request for mortgage assistance. Specifically, Mr. Kelly requested that he be permitted to suspend his monthly mortgage payments while he resolved his financial problems. Mr. Kelly stated he was willing to pay the

real estate taxes and insurance during any time of suspended payments.

6.   On or about December 4, 2007, IndyMac responded to Mr. Kelly's request for mortgage modification.  In its letter, IndyMac acknowledged that Mr. Kelly was requesting mortgage assistance due to his financial hardship, and agreed to forebear from foreclosure until April 2008, provided Mr. Kelly met various conditions.

7.   Mr. Kelly (by his attorney, Mr. Korte) accepted the terms of IndyMac's offer by letter dated January 7, 2008.  Mr. Kelly complied with the IndyMac terms, but IndyMac announced in March that Mr. Kelly was delinquent and that a foreclosure would occur in April if he did not cure his default by payment of the sum of $23,093.18, as well as any additional monthly payments, late charges and fees accruing before the payment was made. If Mr. Kelly failed to cure the default in full, IndyMac would accelerate his mortgage and initiate foreclosure proceedings. This was not the agreement Mr. Kelly thought he had made with IndyMac.

8.   IndyMac refused to engage in any further discussions with Mr. Kelly or Mr. Korte. Consequently, Mr. Kelly informed IndyMac, by letter dated June 10, 2008, that he was exercising his right of rescission pursuant to the Federal Truth in Lending Act.

9.   Neither IndyMac nor OneWest responded to Mr. Kelly's rescission as provided by TILA within the time prescribed by the statute, or at any time.

10.  Noting the failure of IndyMac and OneWest to respond to his rescission, Mr. Kelly sent a second notice of the exercise of his right of rescission to IndyMac and OneWest on May 19, 2009.

11.  On July 11, 2008, IndyMac was placed in conservatorship by the Federal Deposit Insurance Corporation ("FDIC").  A bridge bank, IndyMac Federal Bank, FSB, was created to

assume control of IndyMac's former assets; the bridge bank was itself under the control of the FDIC. On March 19, 2009, the FDIC completed the sale of IndyMac Federal Bank, FSB, to OneWest Bank, FSB ("OneWest"), at a significant discount to the face value of the assets. OneWest was thus knowingly acquiring assets which were non-performing, in default, or at least at significant risk of default.

12. It appears that OneWest then sold the rescinded note to defendant Deutsche Bank National Trust Company, as trustee for a securitized mortgage pool known as Residential Asset Securitization Trust 2007-A9 Mortgage Pass-Through Certificates Series 2007-I. The rescinded note was serviced by defendant Ocwen Loan Servicing, LLC.

.

13. The final decree in the bankruptcy case was entered, and the case was closed, on September 19, 2016. The Chapter 7 Trustee's Report of No Distribution had been filed on October 26, 2015, and showed "Assets Abandoned" in the amount of $684,335 "without deducting any secured claims." This amount is largely, if not solely, comprised of the value of the Property, which was expressly abandoned by the trustee with knowledge of the claim as "disputed." Therefore, Mr. Kelly's claim that the promissory note and deed of trust encumbering the property have been rescinded is a claim which belongs to him, rather.

## CAUSE OF ACTION

1.     The Title is clouded an action is required on disputed interest to clarify who holds the superior claim.

2.     Petitioner motions this court to enter a judgment for a Quiet Title Action.

3.      The Petitioner will show that the Defendant (s) are not a real and beneficial party of interest.

4.      Under United States Supreme Court decision of Carpenter v. Logan, 83 U.S. 16 Wall. 271 271 (1872), the deed of trust follows the promissory note.  Where the promissory note goes, the deed of trust must follow.

5.      Under U.S. Code Title 12: Banks and Banking Part 226—Truth in Lending (Regulation Z), a servicer does not have the rights of a Lender.

6.      The Petitioner will show that the Defendant deutsche bank, is a debt collector, attempting to collect a debt, and is not a real party of interest.

7.      The Petitioner contends that IndyMac Bank may have fully sold their interest in the promissory note in full as governed under Financial Accounting Standard Rule 140 (FAS 140).

8.      Under FAS 140, the seller of an asset must sell the asset to a third party as an arm's length transaction. Once an asset has been sold, the seller forever loses control of the asset. Furthermore, under FAS 140, the seller may not repurchase the asset for the purposes of "reattachment".

9.      A servicer Ocwen is not a real and beneficial party of interest under U.S. Code Title 12: Part 226 (a) 1 - Truth in Lending (Regulation Z).

10.      Based on the failure to file a proof of claim in a similar action, there is no evidence that the Defendant has standing to hold a claim in this matter.

11.      Since there is a significant controversy over who the real parties of interest are in the Deed of Trust, the Petitioner hereby moves this Court to enter an Order compelling all parties who can lay lawful claim on the Deed of Trust to do so by presentment of valid enforceable proof of claim.

12.      If nobody files a lawsuit to vacate the rescission within 20 days of receipt of the notice of rescission, the rescission is final.  Further, if any of the factual issues that you would have expected to arise on a faulty rescission would have been waived.

13.     This is a procedural argument but there is no doubt that it is correct, especially with the wording of the opinion in <u>Jesinoski v. Countrywide Home Loans</u>.  Mr. Kelly did take the appropriate action.  Therefore, his rescission is complete and no case need be filed by Mr. Kelly to obtain Relief.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Petitioner respectfully moves this Honorable Court to enter a judgment ordering the following remedies:

Declare the "Note," "Mortgage" and "Deed of Trust" to be ineffectual;

Declare the promissory note to be declared fully discharged;

Declare the "Note," "Mortgage" and "Deed of Trust" be valued to zero;

For a declaration and determination that Petitioner is the rightful holder of title to the property and that alleged Creditor's and their successors herein, be declared to have no estate, right, title or interest in said property;

For a judgment forever enjoining said creditor or defendants, from claiming any estate, right, title or interest in the subject property;

Granting any such other relief as is necessary and appropriate; and

The Court finds that Mr. Kelly properly rescinded the relevant loan pursuant to TILA; and as Jesinoski suggests, need not do anything. That is what the Jesinoski case stated and the loan is hereby terminated.

## **DEMAND FOR JURY TRIAL**

Kelly hereby demands a Trial by Jury on all causes of action set forth herein allowed under the rules of law.

Respectfully Submitted,

Patrick J. Kelly, Pro se

# APPENDIX III

## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

Chambers of                                                          101 West Lombard Street
**GEORGE L. RUSSELL, III**                                          Baltimore, Maryland 21201
United States District Judge                                        410-962-4055

June 20, 2017

MEMORANDUM TO COUNSEL RE:          <u>Patrick J. Kelly v. OCWEN Loan Servicing</u>
                                   <u>LLC, et al.</u>
                                   Civil Action No. GLR-17-39

Dear Counsel:

Pending before the Court is Defendants'[1] Motion to Dismiss Plaintiff Patrick J. Kelly's Complaint.  (ECF No. 6).  The Motion is fully briefed and ripe for disposition.  No hearing is necessary.  See Local Rule 105.6 (D.Md. 2016).  For the reasons that follow, the Court will grant the Motion and dismiss Kelly's Complaint with prejudice.

This action arises out of Kelly's attempt to rescind a loan (the "Loan") that he executed with IndyMac Bank ("IndyMac")[2] on June 20, 2007.  (Compl. ¶¶ 3, 9, 38, ECF No. 1).  The Loan was a refinance mortgage secured by a deed of trust on a residential property located in Pasadena, Maryland.  (<u>Id.</u> ¶¶ 3, 9).  National Capital Title & Escrow, LLC ("National Capital Title") performed the settlement services.  (<u>See id.</u> ¶ 9).  On June 10, 2008 and July 20, 2008, Kelly sent letters to IndyMac expressing his intent to exercise his right under the Truth in Lending Act ("TILA"), 15 U.S.C. § 1635 (2012), to rescind the Loan.  (<u>Id.</u> ¶¶ 14, 16).  IndyMac received the letters, but failed to respond.  (<u>Id.</u> ¶¶ 15, 16).

At some point after attempting to rescind the Loan, Kelly filed a bankruptcy petition in the United States Bankruptcy Court for the District of Maryland.  On November 16, 2015, Kelly filed an Adversary Complaint against Defendants in the Bankruptcy Court.  (Compl., ECF No. 4, GLR-16-1049).  Among other relief, Kelly sought a declaratory judgment that he properly rescinded the Loan.  (<u>Id.</u> ¶ 12).  In December 2015, Defendants moved to dismiss the Adversary Complaint for failure to state a claim upon which relief can be granted.  (ECF No. 14, GLR-16-1049).  In August 2016, before the Bankruptcy Court ruled on the motion to dismiss, this Court withdrew the reference to the Bankruptcy Court.  (ECF No. 3, GLR-16-1049).

In October 2016, the Court granted Defendants' motion to dismiss, explaining that Kelly did not state a plausible claim for rescission because he did not allege that Defendants failed to satisfy a TILA disclosure requirement.  (ECF No. 37, GLR-16-1049).  The Court dismissed Kelly's complaint

---

[1] Defendants include OCWEN Loan Servicing LLC, IndyMac Mortgage Services, OneWest Bank, NA, and Deutsche Bank National Trust Company as Trustee for Residential Asset Securitization Trust 2007-A9 Mortgage Pass Through Certificates Series 2007-I.

[2] Kelly does not name IndyMac as a Defendant.

without prejudice, affording Kelly an opportunity to pursue rescission under a new cause of action and a revised complaint. (Id.).

Kelly filed the present action on January 5, 2017, again seeking a declaration that he effectively rescinded the Loan. (Compl., ECF No. 1). In his Complaint, Kelly attempts to address the core deficiency that the Court identified in its October 2016 order—that Kelly did not allege that Defendants failed to satisfy the TILA's disclosure requirements. Kelly alleges that National Capital Title "failed to accurately disclose to Mr. Kelly the finance charges, the amount financed, and the Annual Percentage Rate ("APR")."[3] (Id. ¶ 33). According to Kelly, "[t]here is a substantial difference between the APR in the initial TILA disclosure to Mr. Kelly by National Capital Title and the final TILA disclosure." (Id.). This discrepancy in the APR results from two misstatements in other documents: (1) "[t]he truth in Lending Disclosure Statement shows the Finance Charge as $1,975,001.77, which is understated by more than $100," (id. ¶ 34); and (2) "[t]he amount financed as set forth on Line 202 of the HUD-1 is not accurately reflected in the Amount Financed as stated on the Truth in Lending Disclosure Statement," (id. ¶ 35). These misstatements lead to "an understatement of the APR in excess of 1/8 of 1 percent." (Id. ¶ 36). Additionally, Kelly alleges that National Capital Title failed to include "the Uniform Residential Loan Applications . . . in the closing package," which made it impossible for Kelly "to know if he received the annual percentage interest rate and terms he requested." (Id. ¶ 37).

Defendants move to dismiss under Federal Rule of Civil Procedure 12(b)(6). (ECF No. 6). Kelly argues that the Court should not apply the Rule 12(b)(6) standard of review because it applies to actions for monetary relief and Kelly seeks only declaratory relief. Kelly contends that the Court is only required to resolve whether Kelly has standing to bring his declaratory action. This Court, however, consistently applies the Rule 12(b)(6) standard of review to declaratory actions. See, e.g., Nat'l All. for Accessibility, Inc. v. Millbank Hotel Partners, No. RDB 12-3223, 2013 WL 653955, at *6 (D.Md. Feb. 20, 2013) (applying Rule 12(b)(6) standard of review and dismissing complaint seeking declaratory judgment); Emanuel v. Ace Am. Ins. Co., No. ELH-11-875, 2011 WL 5881793, at *6 (D.Md. Nov. 23, 2011) (applying Rule 12(b)(6) standard of review to complaint seeking declaratory judgment). Accordingly, the Court will apply the Rule 12(b)(6) standard of review, which it sets forth below.

"The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint," not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Edwards v. City of Goldsboro, 178 F.3d 231, 243–44 (4th Cir. 1999) (quoting Republican Party v. Martin, 980 F.2d 943, 952 (4th Cir. 1992)). A complaint fails to state a claim if it does not contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), or does not "state a claim to relief that is plausible on its face," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at

---

[3] Kelly does not name National Capital Title as a Defendant.

556).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id. (citing Twombly, 550 U.S. at 555).  Though the plaintiff is not required to forecast evidence to prove the elements of the claim, the complaint must allege sufficient facts to establish each element.  Goss v. Bank of Am., N.A., 917 F.Supp.2d 445, 449 (D.Md. 2013) (quoting Walters v. McMahen, 684 F.3d 435, 439 (4th Cir. 2012)), aff'd sub nom., Goss v. Bank of Am., NA, 546 F.App'x 165 (4th Cir. 2013).

In considering a Rule 12(b)(6) motion, a court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff.  Albright v. Oliver, 510 U.S. 266, 268 (1994); Lambeth v. Bd. of Comm'rs of Davidson Cty., 407 F.3d 266, 268 (4th Cir. 2005) (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).  But, the court need not accept unsupported or conclusory factual allegations devoid of any reference to actual events, United Black Firefighters v. Hirst, 604 F.2d 844, 847 (4th Cir. 1979), or legal conclusions couched as factual allegations, Iqbal, 556 U.S. at 678.  Additionally, if a defendant files a Rule 12(b)(6) motion based on an affirmative defense, the court should not grant the motion unless the grounds for the affirmative defense are clear on the face of the complaint.  Goodman v. Praxair, Inc., 494 F.3d 458, 464 (4th Cir. 2007)

For three years following a loan's closing, the TILA permits the borrower to rescind the loan if the lender (1) fails to provide notice of the borrower's right of rescission or (2) fails to make a material disclosure.  See 15 U.S.C. § 1635(a), (f).  To exercise the right of rescission, the borrower must notify the lender that the borrower intends to rescind the loan.  See id. § 1635(a).  If the borrower seeks to rescind based on the lender's failure to provide notice of the borrower's right of rescission or to make a material disclosure, the borrower must send written notice within three years after the date on which the loan closed.  See Jesinoski v. Countrywide Home Loans, Inc., 135 S.Ct. 790, 792 (2015).

Kelly seeks to rescind the Loan based on Defendants' purported failure to make material disclosures.  (See Compl. ¶¶ 32–38).  Defendants do not dispute that Kelly's June 10, 2008 and July 20, 2008 rescission notices were timely because Kelly sent them less than three years after the Loan closed.  Defendants argue, however, that Kelly's suit is time-barred because Kelly did not file it within one year after Defendants failed to respond to Kelly's rescission notices.  Kelly counters that his suit is not time-barred because all that is required to effectively rescind the Loan is sending timely notice.  The Court agrees with Defendants.

The United States Court of Appeals for the Fourth Circuit has explained that when a borrower sends a timely rescission notice, that does not automatically complete the rescission and void the loan contract.  See Am. Mortg. Network, Inc. v. Shelton, 486 F.3d 815, 821 (4th Cir. 2007) ("This Court adopts the majority view of reviewing courts that unilateral notification of cancellation does not automatically void the loan contract."); see also Gilbert v. Residential Funding LLC, 678 F.3d 271, 277 (4th Cir. 2012) ("We must not conflate the issue of whether a borrower has exercised her right to rescind with the issue of whether the rescission has, in fact, been completed and the contract voided.").  Instead, if the lender agrees that rescission is warranted, the lender "must

3

'acknowledge[] that the right of rescission is available' and the parties must unwind the transaction amongst themselves." Gilbert, 678 F.3d at 277 (quoting Shelton, 486 F.3d at 821).

If the lender does not agree that rescission is warranted or does not respond to a borrower's recession notice, then "the borrower must file a lawsuit so that the court may enforce the right to rescind." Id. (citing Shelton, 486 F.3d at 821). The TILA requires the borrower to file this lawsuit within one year after the alleged TILA violation. 15 U.S.C. § 1640(e); see Gilbert, 678 F.3d at 278 ("Section 1640(e) provides a one-year statute of limitations for the filing of a suit once a violation of TILA has occurred."). A lender violates the TILA when it fails to respond to a borrower's rescission notice within twenty days after receiving the notice. See 15 U.S.C. § 1635(b).

Kelly argues that, as a matter of law, he effectively rescinded the Loan when he sent the June 10, 2008 and July 20, 2008 rescission notices. Kelly invites the Court to flout clear and direct Fourth Circuit precedent that sending a timely rescission notice does not, as a matter of law, complete a rescission. See Shelton, 486 F.3d at 821; see also Gilbert, 678 F.3d at 277. The Court declines this invitation.

The face of the Complaint is clear that Defendants did not respond to Kelly's June 10, 2008 and July 20, 2008 rescission notices. (Compl. ¶¶ 15, 16). Assuming Defendants received the notices on the same dates on which Kelly sent them, the TILA required the Defendants to respond by no later than August 9, 2008, which is twenty days after July 20, 2008. See 15 U.S.C. § 1635(b). When the Defendants did not respond, the TILA's one-year statute of limitations required Kelly to sue by no later than August 9, 2009. See 15 U.S.C. § 1640(e); see also Gilbert, 678 F.3d at 278. Kelly, however, did not file this action until January 5, 2017—more than seven years after the statute of limitations expired. The Court, therefore, concludes that Kelly's suit is time-barred and subject to dismissal with prejudice.[4]

For the foregoing reasons, Defendants' Motion to Dismiss (ECF No. 6) is GRANTED. Kelly's Complaint (ECF No. 1) is DISMISSED WITH PREJUDICE. Despite the informal nature of this memorandum, it shall constitute an Order of this Court and the Clerk is directed to docket it accordingly and CLOSE this case.

Very truly yours,

/s/

_____

George L. Russell, III
United States District Judge

---

[4] In his opposition memorandum, Kelly requests leave to amend. (See ECF No. 11 at 7–8). The Court will deny this request because Kelly's failure to file this action within the TILA's statute of limitations cannot be rectified as this juncture.

4